## TEXAS & N. O. R. CO. v. DAVIS.
### No. 2314.

Court of Civil Appeals of Texas. Beaumont. May 9, 1933.

Rehearing Denied May 17, 1933.

Seale & Thompson, of Nacogdoches, and R. L. Arterbury, of Houston, for appellant.

Hodges & Greve, of Nacogdoches, for appellee.

COMBS, Justice.

On Motion to Strike Statement of Facts.

Before the submission of this case appellee filed a motion to strike out the statement of facts. The motion was taken along with the case and we will first dispose of it before proceeding to a consideration of the issues presented by the appeal. The motion is based on the alleged failure of the appellant to comply with the provisions of article 2238, R. S. 1925, as amended by chapter 34, Acts of the 42nd Legislature, First Called Sess., p. 75 (Vernon's Ann. Civ. St. art. 2238), relating to the preparation and filing of statements of fact. The court reporter prepared a statement of the evidence in proper form, certified to its correctness, and filed it with the district clerk among the papers in this case on June 4, 1932. Thereafter on June 9, 1932, Mr. A. J. Thompson, one of the attorneys for appellant, presented the transcript of the evidence to Hon. Charles Hodges, one of the attorneys for appellee, for his examination and approval. Judge Hodges declined to examine or approve it, but signed an instrument, which appears in the transcript, in which the present-

ing of the transcript of the evidence to him and his refusal to approve it, as above mentioned, is recited, and adds: "We really decline to examine it to determine whether we can approve it until the provision of the law has been followed, and do not waive any rights." On refusal of counsel for appellee to examine and approve the statement it was immediately returned to the office of the district clerk by counsel for appellant, where it was still on file when the affidavit of Mr. Thompson was made, which was June 17, 1932. The record was filed in this court on June 18, 1932, within the time allowed for its filing. Appellee makes the purely technical objection that written notice of the filing was not served upon him and urges a number of objections such as that the record fails to show that the trial court received and considered objections and that it fails to show that the statement was prepared and filed in duplicate, etc. These contentions are without merit. The statement of facts bears the approval of the district judge, the date of his approval not being shown. In the absence of a contrary showing, the presumption obtains that the court acted at the time and in the manner required by law. Woodward v. Smith (Tex. Civ. App.) 253 S. W. 847. The statement of facts consists of only sixty-five pages. It is evident from the facts recited above that counsel for appellee had ample time and opportunity to examine the statement of facts and present objections thereto to the trial court if he had cared to do so. He does not here contend that the statement of fact is incomplete or incorrect or that he has suffered any injury whatever by reason of the matters complained of in his motion. The motion is overruled.

### On the Merits.

Appellee recovered a judgment against the appellant in the district court of Nacogdoches county for depreciation in value of his property, alleged to have resulted from the construction by appellant of a switch or passing track in close proximity to it. Appellee is the owner of a 5-acre tract of land upon which he makes his home in the southern part of the town of Garrison. His property lies east of and adjacent to appellee's right of way which, at the point in question, runs generally north and south. Appellee acquired his land and moved on it about thirty-three years before the trial and had made his home there continuously up to the time of the trial. Appellant had acquired its right of way and constructed the main line of its railroad some years prior to the time appellee acquired his property. His dwelling and improvements are located on the west side of his land and near the line of appellant's right of way. At the time he acquired his property and moved on it, there was a roadway in front of his property parallel with the railroad. Some fifty yards north of his house in the direction

of Garrison there was a crossing over the railroad track, referred to in the testimony as the Adams crossing, by means of which appellee was able to cross over the railroad to the west side and onto the Garrison-Nacogdoches public highway, which at that point parallels the railroad on the west. Appellee testified that when he moved on his place he fixed up the passageway by taking dirt which the railroad had piled out in making the excavation for its railroad track and leveling up the passageway up to the crossing; that from that time on he and his family used the passageway and crossing and the roadway in front of his home which connected with it as a means of ingress and egress to and from his premises, in going to and from town, his place of business, to church, school, etc., and continued to so use them until December, 1930, when the appellant widened and deepened the cut in front of his property and constructed a switch or passing track, which act on the part of appellant forms the basis of this suit. Plaintiff, in his petition, alleged that:

"The defendant, without authority and without plaintiff's consent and over his protest and for the purpose of injuring and damaging plaintiff's property, actually invaded a part of plaintiff's premises and wantonly and designedly tore down a portion of his fence on his land that plaintiff had been using some thirty years and wholly destroyed his roads and in addition thereto at the same time made a large excavation in front of and upon plaintiff's premises and a few feet from his residence about 12 feet deep, 20 feet wide and about 400 yards long, which excavation destroyed his exit and entrance into and from his property and in the manner made necessarily rendered his property and his home unsightly and very dangerous and by reason of which interfered with the free use and enjoyment of his property and caused physical inconvenience, discomfort and detriment to his property as a whole and substantially and almost wholly destroyed the travel upon said road and render it dangerous to travel in front of his property, and in this way affected injuriously the value of plaintiff's property and almost destroyed the use and enjoyment of it as a home and the cash and market value of plaintiff's property."

He further alleged that before the injuries complained of his property was worth $3,500 and that by reason of the wrongful acts complained of it was worth only $1,500, and he sued for damages in the sum of $2,000 for the depreciation in value of his property.

Defendant answered by general demurrer, general denial, and further pleaded that such excavations as were made were wholly upon its own land for the purpose of putting in additional switching facilities which were necessary to its efficient service to the public; that it did not invade plaintiff's premises or

any part thereof; that the roadway across its track was a private crossing; that the use of the same by the plaintiff was a permissive use at the will of the defendant; that the defendant reserved the right to change the location of said private crossing at any time when necessary structural changes made it essential to make such change in the location of such private crossing.

The evidence shows that appellant's road in front of appellee's premises is on a hill or grade; that for the better handling of traffic on its line, it found it necessary to construct a passing or switch track at that point some 1,700 feet in length; that in putting in the switch track it widened the cut and also deepened it in order to reduce the grade so that the passing track located on the east side of the right of way and near the appellee's premises was several feet lower than the main line track; that the excavation immediately in front of the plaintiff's residence, which is on the top of the hill, was some 7 feet or more deep and grew shallower for several hundred feet in either direction. The making of this deep cut made necessary the relocation of the crossing which appellee had been using. Appellant put in two crossings at points farther removed for the use of appellee and others living on that side of the railroad. One of these, referred to in the testimony as the Douglas crossing, was located south of appellee's home at a distance of 565 feet, or some 265 feet further from his home than the old crossing had been. The other crossing, referred to as the Wragg crossing, was located several hundred feet north in the direction of Garrison. The widening of the cut also destroyed the roadway in front of appellee's premises and appellant relocated it along the edge of the cut and closer to appellee's premises. The roadway, as relocated, is still on appellant's right of way. The testimony as to this new roadway is somewhat conflicting but is such as to warrant a finding that that portion of it leading north to the Wragg crossing was rendered difficult and dangerous to travel with automobiles and vehicles, owing to the narrow space intervening between the edge of the cut and the fences and obstructions along the opposite side of the road. Plaintiff's testimony tended to show that at one point this roadway was only 9 feet in width. That portion of the road in the opposite direction toward the Douglas crossing was wide enough for travel but was boggy and difficult, or impossible, to travel over during wet weather due to the fact that some of the dirt removed from the excavation was placed on it. The crossings themselves were as good or better than the old crossing. It was also shown that the distance between appellee's yard fence in front of his house and the edge of the, excavation is only 22 to 25 feet and that this does not afford space enough for automobiles to safely turn around.

Appellee testified that these conditions above detailed rendered his premises unsightly and made ingress and egress difficult and dangerous and that his property was practically ruined.

The trial was to a jury and at the conclusion of the evidence defendant made a motion for instructed verdict which being overruled, the case was submitted to the jury on special issues.

In response to the issues submitted the jury found that the character, depth, width, and length of the excavation interfered with the free use and enjoyment of plaintiff's property; that the defendant, in making the excavation, tore down some of plaintiff's fence; that the excavation, as made, interfered with the safety and the use and enjoyment of plaintiff's property; that it rendered the use and enjoyment of plaintiff's premises dangerous; that the excavation, as made, produced physical inconvenience, discomfort, or detriment to plaintiff's property; that it has substantially interfered with travel on his premises; and that the value of plaintiff's property has been diminished as a proximate result of the making of the excavation in the amount of $700. There is evidence to support these findings. The jury also found in response to special issue No. 3 that the defendant, in making the excavation, did not invade or take a part of plaintiff's premises. There is also evidence to support this finding, and no attack is made upon it. On the verdict of the jury the defendant moved for judgment. Its motion was overruled and judgment entered for the plaintiff.

No issue is made that the crossing or the roadway which appellant destroyed were public. While there are allegations to that effect, the evidence shows nothing more than a permissive use and no issue that the road and passageway were public was requested or submitted to the jury, nor is any issue made that the improvement was unnecessary or that it was negligently done.

■■ Appellant's second and third assignments of error complain of the refusal of the trial court to enter judgment in its favor on the verdict of the jury. These assignments are, in substance, that since the jury found there was no actual invasion of plaintiff's property, and there being no evidence that the improvement complained of was negligently or wantonly made, it follows that appellee has no right of recovery. We think these assignments must be sustained. There was no invasion of appellee's property and hence no physical injury or damage to it. No issue was raised that the improvement was unnecessary or that it was negligently made. On the contrary, the facts show, without controversy; that appellant, in making the improvement complained of, subjected its right of way to a proper and legitimate use. It is

elemental that any owner may make any reasonable and proper use of his own property without liability to an adjacent owner, so long as he does not injure any legal right of such owner. It is a necessary incident of his ownership and enjoyment of his property. A railroad is not liable for an act which is the reasonable use of its right of way for proper purposes any more than natural persons would be. Texas & Sabine Ry. Co. v. Meadows, 73 Tex. 32, 35, 11 S. W. 145, 3 L. R. A. 565; G., C. & S. F. Ry. Co. v. Oakes, 94 Tex. 155, 58 S. W. 999, 52 L. R. A. 293, 86 Am. St. Rep. 835; I. & G. N. Ry. Co. v. Pape, 62 Tex. 313.

██ Appellee, in his brief, insists that since the excavation made by appellant was of such character as to interfere with the free use and enjoyment of his premises, rendering ingress and egress difficult and dangerous, thereby subjecting it to physical inconvenience and discomfort and detriment which lessened its value, he is entitled to compensation under article 1, section 17, of the Constitution of Texas. The article referred to provides, in substance, that no person's property may be taken, damaged, or destroyed for or applied to a public use without adequate compensation being made. Appellee argues that such provision of the Constitution has been construed so as to protect the right of adjacent landowners whose land is not actually invaded by railroad companies from certain damages incident to the proximity of the railroad to their property, and cites G., H. & W. Railroad Company v. Hall, 78 Tex. 169, 172, 14 S. W. 259, 9 L. R. A. 298, 22 Am. St. Rep. 42, and Heilbron v. St. Louis Southwestern Ry. Co., 52 Tex. Civ. App. 575, 113 S. W. 610, 979, in support of his contention. It is true that our courts have allowed the recovery of damages for injuries to adjoining property incident to the construction and operation of railroads where there was no actual invasion of such property, but the facts of the instant case do not bring it within the principle upon which such recoveries have been allowed. An examination of the decisions in such cases will show that while the railroad company, in making the improvement, may not have, strictly speaking, invaded the property of the adjacent property owner, nevertheless it did invade and injure some valuable right which the claimant was entitled to make use of in connection with his property and which gave it added value. In G., H. & W. Railroad Co. v. Hall, supra, the railroad company constructed a railroad in close proximity to the plaintiff's home and the noise, smoke, and vibration incident to the operation of its trains greatly injured the value of plaintiff's property, practically destroying it for the purpose of a home. Thus a condition amounting to a nuisance was created, which invaded the plaintiff's right of quiet enjoyment of his property, and whether the noise, smoke, and vibration to which his property was thus subjected by the operation of trains in close proximity to it be treated as an invasion of his property or not, nevertheless a valuable legal right which he was privileged to make use of in connection with it, and which gave it added value, was invaded and his property subjected to a perpetual servitude for the benefit of the public. This was held to constitute a damaging of the property for which plaintiff was entitled to compensation under the constitutional provision referred to. Such is not the situation in the instant case. Here no legal right which the plaintiff was privileged to make use of in connection with his property has been invaded. The crossing and passageway which the appellant relocated were on its property and appellee had only a permissive right to use them. On the facts, the case presented here is quite similar to the case of Heilbron v. Railway Company, supra, also cited by appellee. In that case the appeal was from a judgment in favor of the defendant railroad company. There, as here, the plaintiff claimed damages for the depreciation of his property resulting from the making of an excavation by the railroad company and the destruction of a roadway which he contended was a public road but which, on the facts, the court held to be a private road. The judgment of the trial court denying recovery was upheld. In the opinion by Judge Hodges it was specifically held that since there was no showing that Brittan avenue, a public street which lay adjacent to the excavation, was rendered dangerous and hazardous and plaintiff's right to use it as a means of ingress and egress thereby interfered with, he was not entitled to damages even though his property had depreciated in value by reason of the proximity of the cut. In the instant case the depreciation in value of appellee's property arises as an incident of the close proximity of his premises to the railroad company's right of way. Thus he complains that the open space between the yard fence in front of his house and the edge of the excavation is too narrow to permit cars to turn around, but even so this gives him no right of action against the railroad company, in the absence of negligence on its part. Certainly there is no principle of law which would compel the railroad company to refrain from making a proper improvement of its property as an incident to the better service of the public in order to permit the appellee to enjoy a part of its right of way for a more convenient use of his premises. Nor is any question of a "way of necessity" involved. The appellant acquired its right of way and had its railroad in operation long before the plaintiff acquired his property and established his home adjacent to it. In establishing his home near the railroad, he did so charged with full knowledge of its right to subject its right of way to all proper and legitimate use in further-

ance of its business. If his property has suffered an incidental detriment, it is through no fault of the appellant. Under the facts of this case, there has been no damaging or taking of his property for which compensation is allowed, either at common law or under the provisions of the Constitution.

We are, therefore, of the opinion that judgment of the trial court should be reversed and judgment here rendered for the appellant, and it is so ordered.

Reversed and rendered.